**Rafael SANTIAGO, Plaintiff,**

v.

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES and Dr. Melvin J. Steinhart, Defendants.**

No. 89 Civ. 2069 (RPP).

United States District Court, S.D. New York.

Nov. 29, 1989.

Robert Abrams, Atty. Gen. of the State of New York, New York City (Ellen J. Fried, Marilyn T. Trautfield, Asst. Attys. Gen., of counsel), for defendant New York State Dept. of Correctional Services.

Martin, Clearwater & Bell, Barbara Goldberg, Richard A. Young, Stacie Young, New York City, for defendant Dr. Steinhart.

Michael H. Sussman, Yonkers, N.Y., for plaintiff.

## OPINION

ROBERT P. PATTERSON, JR.,
District Judge.

This is a motion to dismiss for improper service of process under Federal Rule of Civil Procedure 4(d), for failure to state a cause of action under Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3).

Plaintiff Rafael Santiago, a hispanic employee of the New York State Department of Correctional Services (DOCS), seeks redress for damages incurred as a result of incidents surrounding his being placed on involuntary leave in August 1987. The defendants are DOCS and Dr. Melvin J. Steinhart, a psychiatrist whose evaluation allegedly played a role in the involuntary leave order.

Plaintiff claims relief under the equal protection clause of the Fourteenth Amendment and 42 U.S.C. § 1985(3) against both defendants. Plaintiff also sues Dr. Steinhart under 42 U.S.C. § 1983.[1]

---

1. Plaintiff concedes that *Will v. Michigan Dept. of State Police,* — U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), and *Patterson v. McClean Credit Union,* — U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), respectively bar Section 1983 claims against DOCS and Section 1981 claims against both defendants.

## BACKGROUND

Plaintiff has been employed by DOCS as a corrections officer since 1978. On June 15, 1987, plaintiff purportedly had an altercation with a superior officer at the Otisville Correctional Facility in Orange County, New York. Plaintiff then requested a leave of absence which was granted. The Complaint alleges that the leave of absence was necessary to relieve

> tension ... caused by (a) false accusations against him; (b) his superiors' failure to support his rational, job-related decisions and (c) his receipt of an unjustifiably poor work rating.

Comp. at 2, ¶ 9.

Plaintiff subsequently requested reinstatement after receiving treatment from a privately retained doctor. DOCS, however, refused to allow plaintiff to return to work until a physician from the Employee Health Service (EHS), a division of the New York State Department of Civil Services, conducted an evaluation. On July 6, 1987, Dr. John Hargraves examined plaintiff. Dr. Hargraves then referred plaintiff to defendant Dr. Melvin Steinhart for additional psychiatric evaluation.

Dr. Steinhart is a private psychiatrist, licensed to practice in New York, to whom EHS regularly refers patients. In early July 1987, Dr. Steinhart met with plaintiff for a session of approximately ninety minutes. On July 27, 1989, Dr. David Horenstein performed additional psychological testing. Based on Dr. Horenstein's report and his own observations, Dr. Steinhart wrote in August 1987 to EHS recommending continued medical leave of absence and no disciplinary action.

DOCS then informed plaintiff that as of August 13, 1987, he would be placed on involuntary leave of absence and subject to further evaluations pursuant to New York Civil Service Law §§ 72(1) and 72(5).

On August 20, 1987, plaintiff filed with DOCS an appeal of the involuntary leave decision. DOCS responded by referring plaintiff to Dr. Steinhart for another evaluation. On September 15, 1987, Dr. Steinhart interviewed plaintiff for fifteen minutes. The Complaint alleges, "The doctor then prepared a materially misleading and false report, dated September 15, 1987, which the D[O]CS relied upon in determining that Santiago continued to be mentally unfit for service." Comp. at 3, ¶ 18.

The Complaint alleges that Dr. Steinhart and DOCS engaged in an

> effort to label Santiago mentally unfit ... contrived to avoid invoking disciplinary proceedings which would have focused attention on the continued abuse plaintiff suffered at the instance of superior officers.

Comp. at 4, ¶ 24.

In October 1987, DOCS conducted several days of hearings on the involuntary leave decision. The hearing officer affirmed that plaintiff should not be allowed to return to work because of mental unfitness. In late December 1987, DOCS notified plaintiff that, in light of the hearing officer's opinion, involuntary leave would continue indefinitely.

Plaintiff contends that DOCS's decision to continue involuntary leave was part of "a pattern of systematic and intentional discrimination in the terms and conditions of employment practiced by defendant DOCS against minority (Black and Hispanic) C[orrections] O[fficer]s." Comp. at 5, ¶ 27.

Plaintiff then appealed to the New York State Civil Service Commission under Civil Service Law § 72(3). After a hearing in April 1988, the Commission reversed DOCS's decision and found that as of July 15, 1987, plaintiff had been mentally fit for work. The Commission ordered plaintiff reinstated and awarded back pay and benefits. According to the Complaint, "the Civil Service Commission ... lacked the authority to, and did not, award him [plaintiff] compensation for the pain and suffering he endured at the hands of these defendants, or for the fees and costs sustained in defeating D[O]CS's claim that he was mentally unfit for work." Comp. at 4, ¶ 26.

Plaintiff seeks compensatory and punitive damages for the mental distress and the expenses incurred in fighting the alleged "determined effort to declare him

mentally incapable of working." Comp. at 7, ¶ 39(b). Plaintiff also seeks to enjoin any retaliatory activity by DOCS in response to the initiation of this lawsuit.

## DISCUSSION

### I. Rule 4(d)

■ Dr. Steinhart contends that the complaint should be dismissed because plaintiff did not properly serve him with process. According to Dr. Steinhart, the process server delivered the summons and complaint to a colleague of Dr. Steinhart at the Albany Medical Center, Department of Psychiatry. Within the next fifteen minutes, Dr. Steinhart received the summons and complaint. Plaintiff does not contend that the colleague was an agent of Dr. Steinhart.

Technically, none of the specific provisions of Rule 4(d) are satisfied by this mode of service. However, the due process requirement that defendants receive notice of the proceedings was satisfied. *See Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

Under the spirit of Rule 4(d), "actual receipt of the summons and complaint at the particular place where it is served may be the real key to the disposition of many cases." Wright and Miller, Federal Practice and Procedure § 1096, at 78 (1987) (citing *Knarlsson v. Rabinowitz,* 318 F.2d 666 (4th Cir.1963)). Although service of process at one's place of work often is a grounds for dismissal, under the circumstances of this case "it makes little sense to construe Rule 4(d)(1) technically when actual notice has been received; to do so would be inconsistent with the spirit of the federal rules." Wright and Miller, *supra* at 80. The Court denies the motion to dismiss for improper service of process.

### II. Section 1985(3)

■ Both defendants move to dismiss the claim under Section 1985(3) for failure to state a cause of action upon which relief can be granted. Section 1985(3) provides for relief when:

two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws....

Plaintiff's claim fails to satisfy Section 1985(3)'s threshold requirement of a conspiracy between "two or more persons." The only two possible "persons" in the complaint are Dr. Steinhart and DOCS. The latter is a state agency. The complaint names no individuals from DOCS.

"It is well settled that a state and its agencies are not 'persons' under §§ 1983 and 1985." *Rode v. Dellarciprete,* 617 F.Supp. 721 (M.D.Pa.1985) (citations and footnote omitted). Plaintiff's brief fails to address any of the cases cited by defendants that stand squarely for the proposition that a state agency like DOCS cannot be used to satisfy the Section 1985(3) predicate of "two or more persons." *See Richards v. New York State Dept. of Correctional Services,* 572 F.Supp. 1168, 1172 (S.D.N.Y.1983); *Thompson v. New York,* 487 F.Supp. 212, 228 (N.D.N.Y.1979); *Allah v. Commissioner of the Dept. of Corrections,* 448 F.Supp. 1123, 1125 (N.D.N.Y. 1978) (citing *Curtis v. Everette,* 489 F.2d 516 (3d Cir.1973), cert. denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974)).

The Court also finds guidance in the Supreme Court's recent holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police,* ___ U.S. ___, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). There is a principal that "under §§ 1983 and 1985 the term 'persons' has the same meaning. *An–Ti Chai v. Michigan Technological University,* 493 F.Supp. 1137 (W.D.Mich.1980); *Thompson v. State of New York,* 487 F.Supp. 212[, 228] (N.D. N.Y.1979)." *Rode,* 617 F.Supp. at 723 n. 2. Plaintiff was aware of the *Will* decision at the time of filing its brief, *see* Pl. Br. at 1 n. 1, and has made no attempt to establish that in 1871 Congress intended to define "persons" in Section 1985 differently than it had that same year in Section 1983. *See Will,* 109 S.Ct. at 2311 ("examination of the

authorities of the era suggests that the phrase was … not to include the States.") (citations omitted).

The Complaint fails to state a claim under Section 1985(3) because the prerequisite of "two or more persons" is unsatisfied.

## III. Section 1983

Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiff concedes that he cannot bring a Section 1983 claim against DOCS because of the holding in *Will v. Michigan Dept. of State Police, supra,* that a State is not a "person" under Section 1983. Plaintiff does not concede that *Will's* holding that a state official acting in his official capacity affects the Section 1983 claim against Dr. Steinhart.

Dr. Steinhart attempts to portray the Section 1983 claim against him as an action against a privately retained physician. Unless a privately retained doctor acts in a conspiracy with the state, those physicians are "consistently … dismissed from § 1983 actions for failing to come within the color of state law requirement of this section." *Briley v. California,* 564 F.2d 849, 855–56, 858 (9th Cir.1977).

However, Dr. Steinhart mischaracterizes the Complaint. Although the Complaint does allege a "conspiracy" between the doctor and the State agency[2], Dr. Steinhart is portrayed as a state official rather than a private individual. DOCS hired Dr. Steinhart. The doctor's duties were to aid New York State in its initial determination of plaintiff's mental fitness and in its preparation for the Section 72 hearing.

The Complaint states, "At all times, Steinhart acted as an agent of the Employee Health Services, an instrumentality of the State of New York." Comp. at 5–6, ¶ 33. The next paragraph alleges that Dr. Steinhart acted in "his official capacity as an agent of the State." Comp. at 6, ¶ 34. Taken together those two paragraphs allege that all acts of Dr. Steinhart described in the Complaint are those of a state official.[3]

The Complaint alleges that Steinhart is "liab[le] in his individual capacity, as well as his official capacity." Comp. at 6, ¶ 34. *Will's* broad holding prevents a court from holding an "agent of the state" with an "official capacity" liable under Section 1983. 109 S.Ct. at 2311–12. However, Dr. Steinhart can be held liable in his individual or personal capacity.

"On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). As already discussed, Dr. Steinhart allegedly acted under color of state law by virtue of his position as a state agent. The only remaining issue is wheth-

---

**2.** The alleged "conspiracy" is not the type of joint activity that makes a privately retained doctor into a state actor. *See Briley,* 564 F.2d at 858. For a private individual's actions to be attributable to state action, there must be allegations not only of a common goal or similar intent, but also of a mutual understanding or agreement. *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206–08 (7th Cir.1980) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *Slotnick v. Staviskey,* 560 F.2d 31 (1st Cir.1977); *Obeda v. Connecticut Board of Registration for Profession-* *al Engineers and Land Surveyors,* 570 F.Supp. 1007, 1016–17 (D.Conn.1983). The Complaint lacks any reference to a mutual understanding and only alleges that Dr. Steinhart facilitated the state's plan.

**3.** Plaintiff's characterization of Dr. Steinhart as a state official in the Complaint enables the defendant to assert immunity defenses in his answer as to acts within the course and scope of his official duties for which he is being sued personally.

er the Complaint alleges that Dr. Steinhart by his alleged intentionally false acts and malicious conduct deprived plaintiff of a federal right.

The Complaint alleges that Dr. Steinhart violated the equal protection clause. State action is a prerequisite to an equal protection violation. The essence of the state action standard is whether any deprivations of equal protection committed by Dr. Steinhart can be attributed to the government. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937–39, 102 S.Ct. 2744, 2753–54, 73 L.Ed.2d 482 (1982). Those allegations of the Complaint that satisfy the "under color of state law" requirement of Section 1983 also satisfy the Fourteenth Amendment's state action requirement in this case. *See Id.* at 935 & n. 18, 102 S.Ct. at 2752 & n. 18.[4]

■ The alleged state action of Dr. Steinhart infringes upon the equal protection clause. The Complaint alleges that Dr. Steinhart intentionally utilized his position as an agent of DOCS to discriminate intentionally against plaintiff due to his hispanic origin. A suspension from employment due to a state actor's racial discrimination violates the equal protection clause. *See Colorado Anti–Discrimination Commission v. Continental Air Lines, Inc.*, 372 U.S. 714, 721, 83 S.Ct. 1022, 1025, 10 L.Ed.2d 84 (1963); *Ciechon v. City of Chicago*, 686 F.2d 511 (7th Cir. 1982); *Langford v. City of Texarkana*, 478 F.2d 262, 266 (8th Cir.1973) ("Racially discriminatory state action in employment is unlawful under the Equal Protection clause of the Fourteenth Amendment.") (citing *Wieman v. Updegraff*, 344 U.S. 183, 191–92, 73 S.Ct. 215, 218–19, 97 L.Ed. 216 (1952)); *cf. Ad Hoc Committee of Concerned Teachers v. Greenburgh # 11 Union Free School District*, 873 F.2d 25, 29 (2d Cir.1989) (discussing how a 'would-be teacher ... might be the most logical person to challenge the [D]istrict's hiring practices' under the equal protection clause)

(quoting *Otero v. Mesa County Valley School District*, 568 F.2d 1312, 1314 (10th Cir.1977); *Rode v. Dellarciprete*, 845 F.2d 1195 (3rd Cir.1988) (pattern of harassment against public employee motivated by invidious discrimination is actionable under equal protection clause).

The Complaint sufficiently pleads an action against Dr. Steinhart in his personal capacity, because Dr. Steinhart is designated as a state actor who allegedly engaged by personal actions in invidious racial discrimination against a public employee. The motion to dismiss plaintiff's Section 1983 claim is granted as to DOCS and Dr. Steinhart in his official capacity and is denied as to Dr. Steinhart in his personal capacity.

## IV. Equal Protection

Plaintiff asserts claims under the equal protection clause of Section 1 of the Fourteenth Amendment against Dr. Steinhart and DOCS. The Court need not address the possibility of a direct cause of action under the Fourteenth Amendment against Dr. Steinhart in his personal capacity, because the same relief is available under the express remedy provided by Section 1983. *Cf. Carlson v. Green*, 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980) (no direct cause of action under the Constitution when Congress has created an alternative remedy as "a *substitute*"). *Will* holds that the enactment of Section 1983 created no rights against states or state officials in their official capacity. Since Section 1983 does not provide for relief against DOCS or Dr. Steinhart in his official capacity, it must be determined if plaintiff has rights to relief against them arising directly under the Constitution.

### A. Eleventh Amendment

■ Plaintiff's claims for retroactive relief must overcome hurdles of sovereign immunity under the Eleventh Amendment with respect to both the claim against the

---

**4.** Dr. Steinhart also argues that the action must be dismissed because *Lugar* holds that a defendant does not act under color of state law simply by invoking a state proceeding. That aspect of *Lugar* is inapplicable to this case, because the state action requirement is satisfied by Dr. Steinhart's official agency relationship with DOCS rather than simply by a connection between his acts and the invocation of Section 72 proceedings.

State agency DOCS and the official capacity claim against Dr. Steinhart.

## 1. DOCS

In *Holley v. Lavine*, 605 F.2d 638, 648 (2d Cir.1979), the Second Circuit decided it could, in view of its other holdings in that case, "leave to another day consideration of" the "complicated" question of whether the Eleventh Amendment immunizes a state agency against damage actions brought directly under the equal protection clause of Section 1 of the Fourteenth Amendment. *See also Edelman v. Jordan*, 415 U.S. 651, 694 n. 2, 94 S.Ct. 1347, 1351 n. 2, 39 L.Ed.2d 662 (1974) (Marshall, J., dissenting) (Court has "not decide[d] whether the States' Eleventh Amendment immunity may have been limited by the later enactment of the Fourteenth Amendment to the extent that such a limitation is necessary to effectuate the purposes of that [Fourteenth] Amendment....."); *United States v. DCS Development Corp.*, 590 F.Supp. 1117 (W.D.N.Y.1984) (refusing "to go further in this case than was deemed prudent in *Holley v. Lavine* ").[5]

The Eleventh Amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Since *Hans v. Louisiana*, 134 U.S. 1, 10, 10 S.Ct. 504, 505, 33 L.Ed. 842 (1890), the Supreme Court has interpreted the Eleventh Amendment to render states and state agencies immune from suits for damages in federal court even where jurisdiction is premised on a federal question.

Two exceptions to the blanket jurisdictional ban of *Hans* have developed. The first occurs when a congressional enactment clearly intends to hold states liable for damages. *See Pennsylvania v. Union Gas Co.*, —— U.S. ——, 109 S.Ct. 2273, 2281, 105 L.Ed.2d 1 (1989) (plurality); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *County of Monroe v. Florida*, 678 F.2d 1124, 1131–1132 (2d Cir.1982) (explaining *Edelman v. Jordan*, 415 U.S. 651, 672, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974) and *Employees v. Missouri Dept. of Public Health and Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973)), cert. denied, 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951.

The second exception is when a state consents to liability. *See Clark v. Barnard*, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883); *Parden v. Terminal Railway*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). Evidence of a state's waiver must be strong, *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360, but it can be in the form of "constructive consent." *Petty v. Tennessee Missouri Bridge Commission*, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). *See County of Monroe v. Florida*, 678 F.2d at 1133.

The issue presented by plaintiff's claim against DOCS is whether an action brought directly under the equal protection clause falls within an exception to *Hans*. Section 1 of the Fourteenth Amendment potentially embodies both exceptions to state sovereign immunity, because the Fourteenth Amendment was adopted after the Eleventh Amendment and pursuant to both the approval of Congress and the consent of the states. If Section 1 expresses an intent to hold states liable, then Section 1 constitutes an exception to *Hans*. Although a constitutional provision has never been held to be an exception to the sovereign immunity doctrine, there is no rational reason why the 'law of the land' cannot just as

---

**5.** Courts in this Circuit have been able to avoid this issue because the relief sought was available without reaching the sovereign immunity issue. *See Holley*, 605 F.2d at 648 ("[W]e see no persuasive reason to consider these matters. We have already concluded that plaintiff is entitled to a judgment against the County defendant for the same amount she could recover against the State defendant."); *United States v. DCS Development Corp.*, 590 F.Supp. 1117, 1122 ("I see no great harm in relegating these defendants to the New York Court of Claims, wherein the State of New York has consented to be sued ..., for the prosecution of their constitutional claims"). In the case at hand, defendants have been unable to point to an alternative which may yield full recovery for the damages claimed here.

readily satisfy the conditions for an exception as a statute.

On its face, Section 1 is an explicit restriction upon states. Section 1 states in part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Justice Rehnquist, writing for the Court in *Fitzpatrick v. Bitzer,* recognized that Section 1 is "by express terms directed at the States." 427 U.S. at 453, 96 S.Ct. at 2670 (discussing both Section 1 and Section 5). Supreme Court dicta also discusses the historical role of the Fourteenth Amendment in shifting power to the federal government to restrict state governments. *See Pennsylvania v. Union Gas,* 109 S.Ct. at 2282 (plurality); *Id.* at 2302 (Scalia, J., concurring in part and dissenting in part); *Fitzpatrick,* 427 U.S. at 453–55, 96 S.Ct. at 2670–71.

Furthermore, Section 1 has long been recognized as a self-executing provision of law directed at states. *See The Civil Rights Cases,* 109 U.S. 3, 20, 3 S.Ct. 18, 27, 27 L.Ed. 835 (1883) (the Fourteenth Amendment "is undoubtedly self-executing without any ancillary legislation"); *Gentile v. Wallen,* 562 F.2d 193, 196 (2d Cir.1977) (upholding valid cause of action directly under Fourteenth Amendment with citations to "at least five other circuits [which] have recognized causes of action directly under the Fourteenth Amendment").

In the seminal case of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Court enjoined the state of Minnesota from violating Section 1 of the Fourteenth Amendment. Since *Ex Parte Young* there has been a series of prominent cases arising directly under the equal protection clause. *See, e.g., Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); *University of California v. Bakke,* 438 U.S. 265, 289, 98 S.Ct. 2733, 2747, 57 L.Ed.2d 750 (1978); *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).

In *Milliken v. Bradley,* 433 U.S. 267, 291, 97 S.Ct. 2749, 2762, 53 L.Ed.2d 745 (1977), the Court upheld "a federal-court judgment enforcing the express prohibitions of unlawful state conduct enacted by the Fourteenth Amendment. Cf. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)." *Milliken's* cite to *Fitzpatrick* is significant, because in *Fitzpatrick* the Court held that a statute enacted pursuant to Section 5 could constitute an exception to the Eleventh Amendment.[6] The cite in *Milliken* to *Fitzpatrick* indicates that the Court views *Milliken's* self-executing application of Section 1 to unlawful state conduct to be analogous to *Fitzpatrick's* application to a state of a federal statute enacted pursuant to Section 5 of the Fourteenth Amendment.[7]

---

**6.** *Fitzpatrick* only addressed the relation between Section 5 of the Fourteenth Amendment and the Eleventh Amendment. *Milliken's* citation to *Fitzpatrick* comes from the Supreme Court's explanation of why a federal court remedy in an action brought under Section 1 of the Fourteenth Amendment is not limited by Tenth Amendment restrictions on federal interference with "the integrity of the structure and functions of state and local government." 433 U.S. at 291, 97 S.Ct. at 2763. Since there was no Tenth Amendment issue in *Fitzpatrick,* the reasoning of *Fitzpatrick* is even more readily applicable to the issue of whether an action under Section 1 of the Fourteenth Amendment is limited by the Eleventh Amendment.

**7.** The relief awarded in Section 1 cases like *Ex Parte Young* and *Milliken* is limited to prospective relief, while in the case at hand plaintiff seeks retroactive relief in the form of money damages. The portion of the *Ex Parte Young* and *Milliken* holdings limiting remedies to prospective relief is explained in *Edelman v. Jordan, supra.* That rule, however, is not applicable to this case.

In *Edelman,* Justice Rehnquist explained the *Ex Parte Young* fiction and its limitations. The *Ex Parte Young* fiction enables a plaintiff to evade the scrutiny of the Eleventh Amendment by suing a state official in his official capacity rather than the state or state agency. In reality the suit is against the state and state funds are at stake, but the simple device of naming only an officer in the caption renders state sovereign immunity inapplicable. *See Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89,

Accordingly, *Milliken* views the equal protection clause as not requiring the enforcing legislation permitted under Section 5 for the Eleventh Amendment to be limited. Since Section 1 of the Fourteenth Amendment, adopted after the Eleventh Amendment, expresses the intent of Congress and the States to have the equal protection clause apply to the States despite the doctrine of sovereign immunity, the Eleventh Amendment does not bar this action brought against a New York State agency under Section 1 and the Court has jurisdiction over this constitutional cause of action.

### 2. Dr. Steinhart

■ An official capacity action can be maintained despite the Eleventh Amendment only in limited circumstances. *See Edelman v. Jordan, supra; Ex Parte Young, supra.* The Supreme Court's Eleventh Amendment jurisprudence unequivocally bars plaintiff from recovering retroactive damages against a defendant in his official capacity. *See supra* note 7 (discussing *Ex Parte Young* and *Edelman v. Jordan*). Since the equal protection claim against Dr. Steinhart in his official capacity is for retroactive relief, it is dismissed.

### B. Fourteenth Amendment

■ Even though the Eleventh Amendment does not immunize DOCS from an equal protection violation, an issue still remains as to whether the equal protection clause permits the retroactive relief sought by plaintiff. As determined in the Section 1983 discussion, the allegations of invidious racial discrimination in public employment are sufficient to state a cause of action under the equal protection clause. The issue is whether monetary compensation is an appropriate form of relief under the equal protection clause.

As discussed above, plaintiff has no cause of action against DOCS under the civil rights statutes. Furthermore, plaintiff's remedies before the State Civil Service Commission and under Title VII only permit recovery of back pay and benefits. Thus, plaintiff brings this action under the Constitution to obtain compensation for his expenses and emotional suffering allegedly caused by DOCS' invidious discrimination.[8]

When there is no statutory remedy available, the Supreme Court has upheld damage remedies stemming from constitutional violations in what has come to be known as *Bivens* actions. *See Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971). In *Davis v. Passman,* 442 U.S. 228, 242, 99 S.Ct. 2264, 2275, 60 L.Ed.2d 846 (1979), the Court wrote:

> [U]nless such [justiciable constitutional] rights are to become merely precatory, the class of those litigants who allege that their own constitutional rights have been violated, and who at the same time

102, 104–05, 104 S.Ct. 900, 909, 910, 79 L.Ed.2d 67 (1984).
The *Edelman* Court held that when the *Ex Parte Young* fiction is used, only prospective relief could be sought. In this case, plaintiff has not tried to evade the Eleventh Amendment by resorting to the *Ex Parte Young* fiction. Plaintiff's contention is that the Eleventh Amendment does not apply because the exceptions to the Eleventh Amendment of congressional intent and state waiver apply. When an exception to the Eleventh Amendment applies, retroactive monetary relief is permitted. *See, e.g., Fitzpatrick, supra.* There is, however, still the issue of whether the equal protection clause provides grounds for retroactive relief. *See supra* Section IV:B.

**8.** DOCS has not cited "statutory language or clear legislative history" providing that a constitutional cause of action against a state agency for expenses and emotional injury cannot complement the statutory schemes for recovery. *Cf. Bush v. Lucas,* 462 U.S. 367, 378, 103 S.Ct. 2404, 2411, 76 L.Ed.2d 648 (1983) (discussing when alternative statutory remedies bar a cause of action directly under the Constitution).
In *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 2466–68, 101 L.Ed.2d 370 (1988), *Bush v. Lucas, supra,* and *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), special factors of United States fiscal, personnel and military policy dictated that it would be inappropriate for the judiciary to supplement congressional remedies. By contrast, this is a cause of action against a state agency rather than a federal defendant. It would be contrary to the intention of the Fourteenth Amendment to defer to incomplete statutory remedies for violations of equal protection by a state. *See Ellis v. Blum,* 643 F.2d 68, 83–84 (2d Cir.1981) (constitutional action against state defendants).

have no effective means other than the judiciary to enforce those rights, must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights.

The *Davis v. Passman* court then upheld a damages remedy for public employment discrimination in violation of equal protection, because computing the damages would not impose upon the district court a historically inappropriate or unmanageable task. *Id.* 442 U.S. at 245, 99 S.Ct. at 2277.

The plaintiff in *Davis v. Passman* only sought back pay, while Mr. Santiago seeks damages for the out of pocket expenses and "profound mental distress; humiliation; degradation; embarrassment and social isolation" resulting from the state agency's alleged equal protection violation. Comp. at 4, ¶ 25. Since plaintiff has already received back pay, the issue arises whether he has already been afforded complete relief and whether the Court would be overstepping its bounds by providing an opportunity for additional relief.

The facts of *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), would seem to counsel that the Court not give plaintiff the opportunity to receive emotional damages. *Schweiker* was a *Bivens* action premised upon a denial of welfare benefits in violation of due process. The Federal Social Security program provided administrative procedures through which plaintiffs were awarded full retroactive welfare benefits. The plaintiffs in *Schweiker* then brought a *Bivens* action in which they sought damages for emotional suffering to complement the award of retroactive benefits. The Supreme Court dismissed the case because the relief sought was unavailable as a matter of law.

A closer examination of *Schweiker*, however, reveals that the holding has no bearing on this case. The basis for the holding in *Schweiker* was not the unavailability of emotional damages for a constitutional

tort, but the presence of a "special factor" —interference with another political branch of the federal government—which prohibits a court from recognizing a *Bivens* action. 108 S.Ct. at 2466-68.[9] Justice Brennan noted in his dissent in *Schweiker*, "The Court does not for a moment suggest that the retroactive award of benefits to which respondents have always been entitled remotely approximates full compensation for such trauma." 108 S.Ct. at 2472 (Brennan, J., dissenting).

Indeed, the Supreme Court has repeatedly emphasized the importance of providing damages for emotional suffering.[10] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974), defined the term "actual injury" to include out of pocket expenses and "personal humiliation and mental anguish and suffering." The Supreme Court included emotional and mental distress within the appropriate scope of damages for a due process violation in *Carey v. Piphus*, 435 U.S. 247, 263-64, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978), because "[d]istress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff."

In addition, the original constitutional tort case, *Bivens*, was an action for damages for the "great humiliation, embarrassment, and mental suffering as a result of the agents' unlawful conduct." 403 U.S. at 389-90, 91 S.Ct. at 2001. The Supreme Court held that a cause of action existed in *Bivens* because the emotional damages sought were a "particular remedial mechanism normally available in the federal courts." *Id.* at 397, 91 S.Ct. at 2005 (citing *Marbury v. Madison*, 1 Cranch 137, 163, 2 L.Ed. 60 (1803), for the proposition that for every injury caused by the deprivation of a civil right there must be a remedy). *See also Ellis v. Blum*, 643 F.2d 68, 83-84 (2d Cir.1981) (following *Davis v. Passman*'s

---

**9.** That "special factor" is not present in this case, because plaintiff is suing a state agency under the Fourteenth Amendment. *See supra* note 8.

**10.** The Supreme Court has designated the terms "mental suffering" and "emotional anguish" and "distress" to be equivalent, *Carey v. Piphus*, 435 U.S. 247, 264 n. 20, 98 S.Ct. 1042, 1052 n. 20, 55 L.Ed.2d 252 (1978), and they are used interchangeably throughout this opinion.

mandate not to leave constitutional torts unaddressed).

DOCS has provided no reason why emotional damages should be available for due process and Fourth Amendment violations, but not equal protection deprivations. The rules governing compensation for injuries caused by a deprivation of constitutional rights should be tailored to the particular right in question. *Carey v. Piphus*, 435 U.S. at 259, 98 S.Ct. at 1050. The mental dignity and emotional integrity of racial minorities has been at the crux of the Supreme Court's equal protection jurisprudence since the abandonment of the doctrine of separate but equal. The Court finds an award for emotional damages and out of pocket expenses to be appropriate for the alleged deprivation of equal protection by a state agency's intentional racial discrimination.

## CONCLUSION

The motion to dismiss is denied in part and granted in part. The Complaint is dismissed in its entirety as to Dr. Steinhart in his official capacity. The Court has jurisdiction and the Complaint alleges causes of action under Section 1983 against Dr. Steinhart in his personal capacity and under the equal protection clause against DOCS. All other causes of action are dismissed.

SO ORDERED.